At this time, we'll hear Coleman v. Ducate. Go right ahead, Mr. Palmieri. Good morning. Good morning. May it please the court, William S. Palmieri for William Coleman, the appellant in this matter. A little background on this matter. Mr. Coleman is a British national citizen of the United Kingdom who was incarcerated in the state of Connecticut for several years. As a result of his incarceration, he engaged in lengthy and at times different hunger strikes where he would refuse to take any nutrition or even at times any liquid nutrition. There were a number of underlying actions in both the state of Connecticut and in the district court, and I believe one action even was here before this honorable court. But what we are here on today is the inappropriate dismissal by Judge Squattrito of a pending matter in which Mr. Coleman represented himself as a pro se incarcerated person. And the timing of what happened in this is very... This dismissal, I'm not sure which dismissal you're talking about, the first one was without prejudice. The first dismissal was without prejudice. He was told what he had to do. He absolutely was told. And the circumstances under which he was told was he was deported on June of 2014 from the United States after he had been held for about 18 months after his sentence had expired. And I give you the background. He was held by the immigration services? He was held in the corrections department as a prisoner after his sentence had expired and before he'd been charged with anything else. On what authority? It's not a part of this case, Your Honor, but on the fact that he had said that he might not register as a sex offender, but he was not charged with any action, nor was any prosecution brought. And then after approximately 18 months, the prosecutor in that district said, well, I'm not going to prosecute that. Literally under cover of night, in the morning, he was whisked to the airport on the date that he was taken from the United States, which I think is June 4th. I don't want to say the incorrect date. It's in the brief. I looked at it about five times, June 23rd, 2014. Shortly after that, there were some communications with the court, from the court, that were returned to the court indicating that Mr. Coleman had been removed from the United States. So, in fact, the court knew, after this June 23rd date, that Mr. Coleman had been taken from the United States as a result of being repatriated. What difference does that make? I mean, we now have mail service between the United Kingdom and the United States. This is a pro se individual, Your Honor, and the courts have been historically very— You don't have to be a lawyer to send somebody a postcard. Now, we have also indicated, and we presented that to Judge Squattrido in the motion to reopen, this was a man who was profoundly physically ill and had some mental health issues as well as a result of several years of hunger strike. And the details are gory. I mean, they ended up getting an order to be able to force feed this gentleman to keep him alive. So his physical and mental health was very precarious when he was taken suddenly from the United States. In the U.K., he spent time in the hospital. That's been presented to Judge Squattrido. As an officer of the court, it was presented. It was not presented as an affidavit, but Mr. Coleman was hospitalized. And then around December of that year, Mr. Coleman became aware of this order. Knowing that he was no longer an incarcerated person, he made efforts to obtain counsel. He was not able to do that until March of 2015, at which time he retained me as counsel for the underlying action. And I filed my appearance with Judge Squattrido. Now, Judge Squattrido's rule— Then nothing happened for another four months. Then nothing happened for four months. And what was indicated, that has been indicated to Judge Squattrido, was that the appearance was showed on the ECF system as a motion. But it wasn't. And that's—apparently it was not. But during that period of time— It said appearance. It didn't say motion. Who makes a motion to appear? You're a member of the bar of the court. For a great deal of time. You can appear any day of the week you like. So, now what Judge Squattrido relied on, not only is that four-month period from the time that I filed my motion to reopen, after the time I filed my appearance, but also he faulted Mr. Coleman for the period of time from the time he was removed from the country. The order entered in July of 2014. And then the motion to dismiss without prejudice entered in July of 2014. And in March of 2015, my appearance entered. Now— What's our standard? What's our standard? What's our standard of— The standard is abusive discretion, Your Honor. And then reviewing these under—I set forth the standard of the five points of what the court's got to look at before imposing this draconian sanction of throwing out this case. And I emphasize, this was a pro se litigant. And he was a pro se litigant until the time— Ten months. It takes ten months between his deportation and his next communicating with the court, the last nine months of which happened to be after the dismissal. At what point would you concede that radio silence, if you will, from the plaintiff would be within—would give the district court latitude under an abusive discretion standard to make the dismissal with prejudice? More than that period of time, Your Honor. In this particular case. It is a case-by-case basis. Now, this is an individual who had been very involved in his own pro se actions. He'd kept abreast of things. And the court also was aware of the precarious health situations of Mr. Coleman. So this is the situation where it begs to say, look, there must be something amiss here, that this is not a person who's merely sleeping on his rights. It's a person who cannot effectively advocate for himself at this time. And that's where I hearken back to the fact that this is a pro se up through that period of time. But there was no pleading, for example, when you appeared in April or later that chronicled some inability that your client had had, as in he was institutionalized or something like that, that precluded him from so much as communicating with Judge Cristofino, correct? That was first raised in the motion to reconsider, Your Honor, if my recollection serves me correctly. Now, I entered my appearance in March, I believe, and then four months after that, approximately, give or take a little bit, I moved to reopen the matter. And then when that was denied, in the motion for reconsideration, I articulated that there were these periods of time prior to December of 2014 that Mr. Coleman was hospitalized. Now, it's not going to do away with every single date up to my appearance in March. But it's going to give the court what the court needs. First of all, upon my appearance, I'm Mr. Coleman's representative. I'm the person to whom pleadings can be directed, orders can be directed, and through whom, obviously, litigation is submitted to the court. So what the court had dismissed the case for was the failure to have someone for the court to be in touch with, the failure to have an address. That was met at the time of the March. I'm not excusing. Surely the purpose of the court having the address is so that the case can proceed. So it could move forward. Absolutely. So even if you look at— You keep saying March. I think it was actually a month later, which is how it gets us to nine months. It was April 16th. This is docket 66. I'm not sure where March is in. My apologies. I've misspoken, and I have the record in front of me. I'll defer to Your Honor that— Yeah, because the motion to reopen was four months later, which was in August, the mid-August. My apologies. I've misspoken. As I know, it was several months, up to ten months before my appearance. You've reserved a couple minutes. I have. We'll hear you then, sir. Thank you very much. Good morning. Good morning. May it please the Court, my name is Lynn Wittenbrink. I'm an assistant attorney general, and it is my honor to represent the defendants in this action. The three remaining defendants, after some Byzantine pleading, are former Commissioner of Correction Brian Murphy, who retired from the Department of Correction in October of the year 2010. Dr. Suzanne Duquette, who is a Tripoli board-certified psychiatrist, who was the director of mental health services for the Department of Correction, she left their employee in July of 2012, as well as— They both left before the events transpired that are of interest to us, and therefore, that's not a ground for alleged prejudice by reason of delay. Right. They left. They didn't leave before the events that are complained of in the lawsuit, although many of the events complained of in the lawsuit are undated. Correct. They left prior to the lawsuit. But I do think that the fact that over the passage of time, they have left. One of the former defendants, Peter Murphy, is scheduled to retire April 1st. But the Department of Correction is an agency that has a fair amount of turnover, so they're not the only ones that have left. Your point is that the delay in time matters. Absolutely, and that it matters. They were retired already, but I think it's somewhat odd logic to say, well, they had already retired, so therefore, no prejudice can inure by additional passage of time. I mean, this would be a burdensome challenge to have to go back and try to recreate things, and all the passage of time adds to that. The plaintiff has discussed in his brief. We're really just talking about one year. Now, that's a lot of time looked at from one perspective, but in terms of the history of litigation, it's a twinkling of an eye. Not always, Your Honor. I think the case law that this circuit has issued, the Chira matter, says that prejudice can be presumed in as little as two to six months. Memories fail. Documents become harder and harder to procure. And I do think that in this case, prejudice also was caused to the defendants by the fact that the allegations were constantly changing. So it wasn't as if it was an efficient action up until that point, and then the year kind of brought everything to a halt and it could just pick up again. Did the allegations change after the year elapsed? Well, Attorney Palmeri, on behalf of the plaintiff, has indicated he would like to reamend the complaint. So it's my understanding that they will. There were no pleadings during the year, and there have been no pleadings since other than the motion to reopen. I do want to point out that in the motion to reopen, Attorney Palmeri only, as counsel for the plaintiff, only cited the fact that the plaintiff had been deported a year previously. He didn't say anything about any hospitalization. He didn't say anything about any ongoing health problems. Those were not brought to the district court's attention until the motion to reconsider, at which point in time it's improper to bring forth evidence that was entirely in existence at the time of the motion to reopen. Is there any context that explains the plaintiff's failure to reach out to the district court during the period of time between July and April? I don't believe so, Your Honor. I don't think there's any context that excuses the plaintiff or his counsel for the extreme delay, which turned out to be 13 months when all is said and done. I would also like to touch on the jurisdictional argument. The plaintiff keeps arguing that the Rule 41 dismissal in the summer of 2014 was an improper dismissal. However, that is not stated in the notice of appeal before this court, and the federal rules of appellate procedure state clearly that this court only has jurisdiction to consider what is in the notice of appeal. The Rule 41 dismissal without prejudice does not automatically get rolled into the denial of the motion to reopen. This case is procedurally identical to Watts v. Divine, which relies on the Supreme Court case, Smith, which is also cited in our brief. It's also stated in a case relied upon by both parties, Schrader v. CSX Transportation, which says that the original dismissal, if it is not mentioned in the notice of appeal, is not before this court. It's beyond this court's jurisdiction. Even if this court were to consider the factors applicable in reviewing a Rule 41 dismissal, I would respectfully submit to the court that all of them were met. The district court did, in fact, consider lesser sanctions insofar as it didn't initially issue an order dismissing with prejudice but without prejudice. So had the plaintiff complied with the court's rules and soon after he was deported, had said, here's my new address and here's why I couldn't communicate with you previously, in that instance, perhaps we wouldn't be here, obviously. But the court did consider lesser sanctions and it didn't enter judgment until a full year with absolutely no communication other than an appearance by counsel with nothing further had been filed. I do think that the jurisdictional argument is important and we would respectfully ask the court to consider that. The pro se plaintiff certainly had the ability to communicate with this court. He had shown on multiple occasions, multiple lawsuits, that he was an able and effective litigator on his behalf. And he certainly could send a letter to the district court saying, I've been deported. Post the evidence in this record that he was an active pro se litigant. Well, if you look at the sheet, you see numerous pleadings that he filed on his behalf. In fact, in reviewing to prepare for the argument, Your Honor, in one of them, in a couple of them, he moved for the appointment of counsel and he would say, I'm writing this from the hospital, from the Department of Correction infirmary or the Department of Correction hospital. So he was able to communicate on numerous occasions with the court acting pro se. And pro ses are not relieved of all obligations. They're not relieved. You don't have to be an attorney to understand that you need to communicate with the court. He had been warned on multiple occasions. So there's no, really no excuse justifying the long delay here that was collective. Plaintiff delayed for nine months and then his counsel delayed for four months. And the prejudice to the defendants is nearly automatic. I mean, it can certainly be presumed that they have the right to rely on finality of judgment, to proceed with their other affairs, and the district court has the ability to take into account other litigants before it as well as the interests of the plaintiff. I think that the argument that counsel is making with regard to the appearance does not rise to the level of excusable neglect. Filing an appearance and then waiting a full four months before communicating with the court as experienced counsel simply doesn't wash as excusable neglect. As something that an experienced counsel would say, I'm just going to wait for the court to act on my appearance before I do anything further. The district court's discretion in this case was in no way abused. And we would ask for the ruling to remain undisturbed. Thank you. Thank you. Mr. Plummer. Yes, thank you. I've waited 13 months for rulings on summary judgment at the district court level. Thirteen months is not a lengthy amount of time in the course of, unfortunately, that's true. It's not an unreasonably long amount of time, particularly in important cases such as this case, certainly a case that was started by and almost to this point litigated by a pro se litigant under the circumstances I've described. Now, it's been argued that Judge Quattrito has considered a lesser sanction. He entered a Rule 41 dismissal and then the case went to judgment. What lesser sanction was considered? There was no lesser sanction. There was not any imposition of a stricter time frame, which could have been done. There was not any imposition of any kind of rule as to what might or might not be allowed in the case as a result of the delay. And the delay was not, it was 13 months, but it was not an unreasonable delay. And Rule 41, the Rule 41 five-part test talks about reopening cases that have gone to judgment as well. So it's appropriate to review these five points. The duration of the plaintiff's failures. Now, we can look at that as the time in which the plaintiff did not reply for 13 months. And whether the plaintiff had received further notices, received notice that further delays would result in dismissal, there have not been any notices that further delays. There was a delay in this case. And then once we came to the court and said, let's reopen this, it was denied. It was denied after the first 10 months. And it was not denied after the subsequent, as a result of the first 10 months. Now, Your Honors talked about prejudice to the defendants. All of the matters that Judge Quattrito discussed, as the court points out, were matters that were in place before any of these issues arose. So no additional prejudice to the defendants accrued. The prejudice is to the pro se plaintiff for not being able to litigate this matter. Thank you. Thank you both. Thank you all very much. We will reserve decision.